*E-FILED: March 31, 2013*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARTHA BERNAL DE FLETES,<br><br>    Plaintiff,<br> v.<br><br>CAROLYN W. COLVIN[1],<br>Acting Commissioner of Social Security,<br><br>    Defendant.<br>_____/ | No. C12-00661 HRL<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: Docket No. 16, 21] |

In this Social Security action, plaintiff Martha Bernal De Fletes ("Plaintiff" or "De Fletes") appeals a final decision by the Commissioner of Social Security Administration ("Defendant" or "Commissioner") denying her applications for Disability Insurance Benefits and Supplemental Security Income pursuant to the Social Security Act. Presently before the court are the parties' cross-motions for summary judgment. The matter is deemed fully briefed and submitted without oral argument. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned. Upon consideration of the moving papers, and for the reasons set forth below, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. BACKGROUND

De Fletes was 36 years old when the Administrative Law Judge ("ALJ") rendered the decision under review in this action. Administrative Record ("AR") 238, 37. Her prior work experience includes work as a packer and sorter in a packing company, and work planting, cleaning and spacing at a nursery. AR 231. She worked at a nursery for eight years, from 1994 through 2002. *Id.* She worked at a packing company for four years, from 2003 through May of 2007. *Id.* She claims disability as a result of gastric problems, neck problems, chronic headaches, back pain, and depression. *Id.* at 68-69, 230. Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income, claiming to be disabled as of May 14, 2007. *Id.* Plaintiff's claim was denied initially and upon reconsideration. She filed a request for hearing before an ALJ, and the ALJ conducted a hearing, at which Plaintiff was represented by counsel.

In a decision dated February 1, 2010, the ALJ found that the Plaintiff had not been under a disability within the meaning of the Social Security Act ("the Act") from May 14, 2007 through the date of the decision. AR 26. The ALJ evaluated Plaintiff's claim of disability using the five-step sequential evaluation process for disability required under federal regulations. *See* 20 C.F.R. § 404.1520 (2007).

At step one, the ALJ found that De Fletes had not engaged in substantial gainful activity since May 14, 2007. AR 28. At step two, she found that plaintiff had the following severe combination of impairments: mild degenerative disc disease of cervical spine; mild degenerative disc disease of the lumbar spine; and bilateral C6/C7 and L5/S1 radiculopathy. *Id.* 28. She found that Plaintiff's gastrointestinal infection had not been shown to be a chronic condition that met the 12 month duration requirement of a "severe" impairment under the Act, that Plaintiff's migraines were not "medically determinable" under the Act, and that Plaintiff's "dysthymic disorder[2]" was "nonsevere" because it did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities. AR 28-30. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 31. At step 4, the ALJ found that

---

[2] Dysthymia is a "mild but long-term (chronic) form of depression." *See* http://www.mayoclinic.com/health/dysthymia/DS01111.

1  Plaintiff had the residual functional capacity ("RFC") to perform the full range of medium work.
2  AR 31. At step five, the ALJ found that Plaintiff was capable of performing her past relevant work
3  as either a "flower picker," or "agricultural packer." AR 36.
4        The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became
5  the final decision of the Commissioner. Plaintiff now seeks judicial review of that decision.

## II.  LEGAL STANDARD

7        Pursuant to 42 U.S.C. 405(g), this court has the authority to review the Commissioner's
8  decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported
9  by substantial evidence or if it is based upon the application of improper legal standards. *Morgan v.*
10 *Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Moncada v. Chater*, 60 F.3d 521,
11 523 (9th Cir. 1995). In this context, the term "substantial evidence" means "more than a mere
12 scintilla but less than a preponderance - it is such relevant evidence that a reasonable mind might
13 accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523; see also *Drouin v.*
14 *Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). When determining whether substantial evidence
15 exists to support the Commissioner's decision, the court examines the administrative record as a
16 whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. Where
17 evidence exists to support more than one rational interpretation, the court must defer to the decision
18 of the Commissioner. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

## III.  DISCUSSION

20       Plaintiff contends that the ALJ's decision should not be affirmed because (1) the ALJ's RFC
21 finding is not supported by substantial evidence; (2) the ALJ's adverse credibility finding is not
22 supported by substantial evidence; (3) the ALJ's rejection of the opinion of treating physician Dr.
23 Helman is not supported by substantial evidence; and (4) the ALJ disregarded the evidence that the
24 State of California had determined that Plaintiff was disabled. Plaintiff requests remand for an
25 immediate award of benefits. Defendant asserts that the ALJ's findings are supported by substantial
26 evidence and free of legal error.

**A.  The ALJ's RFC Finding**

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence because no medical source opined that Plaintiff was capable of "medium" level exertion. A matching medical source opinion of a claimant's RFC is not a prerequisite for an ALJ's RFC finding, however. An RFC is an administrative finding, rather than a medical finding, and the ALJ bears the responsibility for making it. 20 C.F.R. § 404.1546 (c). A claimant's RFC is "the most [a claimant] can still do despite [the claimant's] limitations" and is based on all the relevant evidence in the record. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). An RFC finding describes a claimant's capability, despite limitations. *Id.* An ALJ must base her RFC finding on an analysis of the record as a whole. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

Here, the ALJ considered Plaintiff's work history, Plaintiff's testimony at the hearing, the opinions of treating physicians, the opinions of consultative examiners, and Plaintiff's medical record itself. Plaintiff's medical record includes treatment records and the results of multiple MRIs of Plaintiff's neck and back, which were performed throughout the course of the claimed disability period. In her decision, the ALJ cited extensively to all of these sources.

For example, the ALJ noted that DeFletes went to a physical therapist in June 2007 for her neck and back pain, but, after five sessions, cancelled all of her further appointments. AR 33, 327. The physical therapist wrote that in July 2007, Plaintiff "called to report that she will be having surgery and has cancelled all of her further therapy visits." *Id.*

The ALJ reviewed a spine and brain MRI performed in June 2007, an EMG performed in December 2007, an EMG performed June 2009, and spine and neck MRIs performed in December of 2009. AR 33-35. The ALJ cites to the report of Mark W. Howard, M.D., a Board Certified orthopaedic surgeon and a Board Certified Spine Surgeon. AR 34, 351. Plaintiff's treating neurologist, Dr. Hilman, referred Plaintiff to Dr. Howard for a comprehensive orthopedic spine surgical evaluation. AR 351. Dr. Howard relayed that, per Dr. Helman, Plaintiff's December 2007 upper extremity EMG nerve conduction testing was "normal." AR 33, 351. Dr. Howard reviewed Plaintiff's brain and cervical MRIs from June 2007 himself. AR 351. He found that "[t]he brain was read as normal and cervical spine shows minimal bulging but no obvious surgical lesion. [Plaintiff's] chief complaint, therefore, continue[s] to be suboccipital headaches. There is some

4

1 associated neck pain, which is lessor and complaints into the left lower extremity, predominantly the
2 proximal aspect thereof. She reports on occasion, there is some numbness and tingling but no frank
3 weakness. Her complaints are not really dermatomal.[3]" AR 33, 351-352.

4       Dr. Howard made the following objective findings: "Shows her to be mildly overweight. Her neck reveals some diffuse, paracervical tenderness. No deformity or myospasm. Neck range of motion is 85-90%. Upper extremity neurologic is essentially intact without any clearcut dermatomal deficit. She appears to be relatively normoreflexic throughout. She does not have a localizing neurologic deficit." AR 33-34, 352. For his radiographic evaluation, he stated: "Imaging is reviewed. The cervical spine MRI scan shows a loss of the normal cervical lordosis, that is a relatively straight cervical spine and generally smallish, degenerative protrusions at C6-7, minimal C3-4 and C5-6. At no level causing notable neural compression or stenosis." AR 33-34, 352. Dr. Howard's report concluded with a treatment plan: "Certainly from my standpoint, at this point, I don't really have much to offer or add. She does not have any obvious surgical lesion, though it is possible that some of her pain could be emanating from the cervical disc. She does not have any obvious disc protrusion or neural compression and only if all of her other pain management pursuits failed, could we potentially consider working her up further with cervical discography and post disco CT, possibly with either anterior cervical discectomy and fusion or possible cervical disc replacement. I don't think she is at this stage yet . . . I will see her back in the future only if her treatment team determine[s] that she ha[s] failed a pain management course of care and a cervical discography demonstrate[s] a clearcut structural pain generator." AR 34, 353. Contrary to the statement made to her physical therapist, Dr. Howard, the orthopaedic surgeon, did not recommend surgery.

23       The ALJ cited the results of the comprehensive orthopedic evaluation performed by Dale Van Kirk, M.D., a Board Certified Orthopedist. Dr. Van Kirk examined Plaintiff in July 2008 as a result of Plaintiff's disability application. AR 34. Dr. Van Kirk noted "[a]pproximately 20 percent decreased range of motion" in the cervical spine. AR 479. She diagnosed: "1. Cervical strain/sprain due to repetitive motion and overwork. Rule out fibromyositis. 2. Low back pain, chronic, with

---

[3] Non-dermatomal complaints are complaints of pain that do not follow the branch path that flows from a single spinal nerve. *See* http://medical-dictionary.thefreedictionary.com/dermatome.

radiculopathy. 3. Chronic shoulder pain bilaterally, soft tissues primarily." AR 34, 480. For her functional assessment, Dr. Van Kirk opined that Plaintiff should be able to lift and carry 10 pounds frequently and 20 pounds occasionally, an assessment that would categorize Plaintiff as limited to a wide range of "light" work. AR 34, 480; 20 C.F.R. §§ 404.1567(b). The ALJ rejected Dr. Kirk's opinion to the extent it "unduly credited many of the claimant's subjective complaints of pain." AR 35.

The ALJ noted Plaintiff's June 2009 EMG, which Dr. Helman, Plaintiff's treating neurologist described as "abnormal" because of "bilateral deneravation of C6/7 and L5/S1 muscles." AR 34. The ALJ also noted the December 2009 MRIs of Plaintiff's back and neck, which Scott Pereles, M.D., performed at the request of Dr. Helman. AR 34-35, 678. Dr. Pereles found the lumbar spine MRI to be "nearly normal" with "perhaps minimal degenerative disc disease at L5-S1 and minimal left posterior and posterolateral disc bulge causing some minimal foraminal encroachment L5-S1 on the left. No nerve root impingement or a significant stenosis appreciated." AR 34-35, 679. As to the neck spine MRI, Dr. Pereles found "[m]ild multilevel discogenic degenerative changes . . . which at most cause some minimal canal narrowing but no evidence of significant canal narrowing or significant neural foraminal narrowing is appreciated at any level to explain the patient's reported radicular symptoms." AR 681.

As for Plaintiff's dysthymic disorder, the ALJ cited to the uncontroverted psychiatric evaluation performed by Christopher Sanders, PhD, who found that Plaintiff's dysthymic disorder created no functional limitations on her ability to work. AR 30, 474-75. Dr. Sanders' evaluation includes Plaintiff's activities of daily living, as reported by Plaintiff: "[Plaintiff] states that she wakes at 7am and prepares her son's breakfast and takes care of her five year old daughter. She runs errands, cooks, cleans, but needs help with her laundry due to physical pain. She is in bed by 9 or 10pm." AR 474. The ALJ cited Dr. Sander's prognosis: "[Plaintiff] is experiencing mild intermittent depression. She is taking Xanax and no longer experiences anxiety. Prognosis for improved mood in the next year is good." AR 30, 474. Dr. Sanders concluded that Plaintiff's dysthymic disorder created no functional limitations on her ability to work. AR 30, 474-75. The ALJ also cited a January 7, 2009 progress note from Alisal Family Heath Center, which stated

"Anxiety/Dep[r]ession → Pain Personality." AR 30, 628. The ALJ found that plaintiff's dysthymic disorder was "nonsevere." AR 30.

In finding that Plaintiff's claimed gastrointestinal infection/gastritis was not "severe," the ALJ noted that the record only contained evidence of a single episode of gastrointestinal infection, during a recent trip to Mexico. AR 28. As the gastritis "appears to have been a single episode and has not been shown to be chronic," the ALJ found that it did not meet the 12 month duration requirement to classify as a "severe" impairment. AR 28.

The ALJ considered and cited extensively to the record as a whole. The ALJ did not cite to medical source opinions that Plaintiff was capable of "medium" level exertion, but the ALJ was not required to. Instead, the ALJ cited to substantial evidence from the record to support her finding. Although evidence in the record arguably supports more than one RFC finding, it is not this Court's job to make an independent assessment of Plaintiff's RFC. This Court reviews the record to determine whether substantial evidence supports the finding that the ALJ actually made. Although evidence exists to support more than one rational interpretation of Plaintiff's capabilities, the Court affirms the decision of the ALJ because it is supported by substantial evidence. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

Because the Court finds that substantial evidence supports the ALJ's RFC's determination that Plaintiff was capable of performing "medium" work, the Court will not order remand on the basis that the ALJ misstated the exertional requirements of Plaintiff's past work as a "Flower Picker" as "light." Plaintiff argues that work as a Flower Picker requires "medium" exertion, but because the ALJ found that Plaintiff was capable of "medium" exertion, the ALJ's misstatement is not reversible error. For similar reasons, the ALJ did not ere by failing to incorporate the VE's opinion about limitations faced by a claimant capable only of "light" work. As the ALJ ultimately found that Plaintiff was capable of "medium" exertion, the ALJ was not required to incorporate hypotheticals about an individual only capable of "light" work. *See Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (explaining that ALJ is "free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence.") (quoting *Osenbrock v. Apfel,* 240 F.3d 1157, 1164–65 (9th Cir.2001).

**B. Credibility Determination**

Plaintiff argues that the RFC finding is also flawed because substantial evidence does not support the ALJ's credibility determination. On her disability application, Plaintiff stated:

> I have chronic pain that originates in my neck and radiates down to my back and feet. I have chronic headaches that last all day. I can't be sitting down for long periods of time because I get tired and I have to lean my head on something. I have a neck brace that I use when I have more intense pain. I can't be standing for long periods of time either because of my pain. I don't do any lifting or carrying. I have a very difficult time performing simple house chores such as brooming because my pain i[s] very intense. I need help with the other household chores. I have some difficulty reme[m]bering things because I sometimes spend all day laying down due to the pain. I even have vision problems when the pain is at it's pe[a]k. I feel depressed due to my condition; My doctor advised me to stop working. I was no longer able to perform my duties due to my condition.

AR 32, 230. At the hearing, the ALJ asked Plaintiff to describe a typical day, since Plaintiff stopped working. Plaintiff testified "I get up early to send the children to school and then I go back [and] lay down; I [get up] at nine or ten; [I have a 14 year old and a 6 year old]; [when I get up the second time,] I try to clean a little bit the house; [in the afternoons,] I pick up my daughter from school; [in the evening, I do dinner for both my children and my husband]; sometimes [I] watch[] TV; sometimes I help my daughter with her homework; [then I get the children ready for bed]; then I go and lay down [at] nine or ten." AR 74-75. When the ALJ asked Plaintiff to explain why Plaintiff did not feel able to work anymore, Plaintiff responded "I have a lot of pain. There's times that I have a lot of pain and I cannot get up." AR 76. When questioned by her lawyer, Plaintiff stated that when she has headaches, her husband picks the kids up from school and makes dinner. AR 78. The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but the ALJ discredited Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms, to the extent they were inconsistent with an ability to perform the full range of "medium" work.[4]

"If the ALJ finds that claimant's testimony as to the severity of [his] pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*

---

[4] "Medium" work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. 404.1567(c). An ability to do medium work means an ability to do sedentary and light work as well. *Id.*

8

*v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). "[W]here the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which [he] complains, an adverse credibility finding must be based on 'clear and convincing reasons.'" *Lingenfelter v. Astrue*, 504 F. 3d 1028, 1036 (9th Cir. 2007) (quoting *Smolen v. Chater*, 80 F. 3d at 1281.).

The ALJ set forth the following specific reasons for her credibility finding: 1) despite complaints of disabling symptoms, Plaintiff received only routine and conservative treatment; 2) Plaintiff provided no reasonable or credible explanation for not pursuing more aggressive treatments; 3) one of Plaintiff's treating providers stated that Plaintiff has a "pain personality;" 3) Dr. Howard did not find focal or neurological deficits and observed an essentially normal range of cervical motion in January of 2008; 4) the inconsistency between the December 2009 MRIs and Plaintiff's January 2010 hearing testimony that she "cannot get up;" 5) inconsistencies between Plaintiff's statements about her history of headaches; 6) inconsistencies between recent records from Plaintiff's treatment providers indicating that medication helps Plaintiff's neck pain, and Plaintiff's contrary testimony at the hearing; 7) inconsistencies between acknowledged daily activities, such as caring for her children, and Plaintiff's allegations of disabling symptoms. AR 35. The Court finds that the ALJ provided clear and convincing reasons for discrediting Plaintiff's statements.

**C. Dr. Helman's Opinion**

Plaintiff also argues that the ALJ erred by giving "little weight" to the opinions Dr. Helman expressed in two questionnaires. The opinion of a treating physician generally is given more deference than the opinion of non-treating physician because a treating physician is deemed likely to be the medical professional most able to provide a detailed, longitudinal picture of the claimant's impairment. 20 C.F.R. § 416.927(d)(2). A treating physician's opinion, however, is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability. *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (citing *Morgan*, 169 F.3d at 600). Indeed, the determination as to whether an individual is disabled is reserved specifically to the Social Security Administration. 20 C.F.R. § 416.927(e). If the treating physician's opinion is controverted, the ALJ may reject that opinion only by making "'findings setting forth specific,

9

legitimate reasons for doing so that are based on substantial evidence in the record.'" *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995) (quoting *Magallanes*, 881 F.2d at 751). "The ALJ can 'meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Id*. "The ALJ must do more than offer his own conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Regennitter v. Comm'r of the Soc. Security Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (quoting *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

Dr. Helman, who began seeing Plaintiff when her alleged disability began, completed a "Headaches Residual Functional Capacity Questionnaire" on October 29, 2009, and, a day later, he completed a "Cervical Spine Residual Functional Capacity Questionnaire." AR 662-676. In the Headaches Questionnaire, Dr. Helman indicated that Plaintiff was "[i]ncapable of even 'low stress' jobs," and explained that "any stress aggravates pain." AR 667. The next day, however, in response to the same question on the Cervical Questionnaire, he opined that Plaintiff *was* "[c]apable of low stress jobs." AR 673. Yet, also in the Cervical Questionnaire, Dr. Helman opined that Plaintiff could never look up or down, never turn her head to the right or left, and never hold her head in a static position. AR 675. He opined that she could carry no weight, and could not sit or stand for more than five minutes. AR 673, 674. He opined that Plaintiff could never twist, stoop, crouch/squat, climb ladders or climb stairs. AR 675. He further opined that, in an eight-hour work day, Plaintiff could use her right and left hands, fingers and arms "0%" of the time to grasp, turn or twist objects, to do fine manipulations, and to reach. AR 675. In the Headaches Questionnaire, Dr. Helman indicated that Plaintiff's headaches were "*constant* (every day)," "incapacitating," and lasting "*all* day." AR 63-64 (emphasis in original). In the Cervical Questionnaire, Dr. Helman indicated that Plaintiff's headaches lasted for six hours. AR 35, 672. The ALJ rejected the opinions expressed in these questionnaires because of their inconsistencies. AR 35. The ALJ concluded that the inconsistencies indicated that "the form was not filled out based on a longitudinal review of treatment records," and suggested a "subjective report that was accepted and signed by the doctor, not a professional opinion based on his longitudinal treatment records." AR 35.

10

The ALJ also rejected the opinion expressed in Dr. Helman's Cervical Questionnaire because it was not supported by objective clinical findings or by Dr. Helman's own treatment notes. The ALJ observed that Dr. Helman's opinion followed nearly three years of ongoing complaints, "despite no muscle atrophy evidence or objective clinical findings documenting subjective complaints." AR 35. The ALJ also stated that the opinion is not supported by other substantial evidence in the record. ""[I]t is contrary to the orthopedic evaluation of Dr. Howard (who found nearly a full range of motion and no neurological deficit); and it is inconsistent with the very recent 12/2009 MRI report that indicates that there is no spinal abnormality foundation for the claimant's subjective complaints. Indeed, Dr. Helman does not provide any clinical physical examination findings in his treatment notes . . . " AR 35. The Court finds that the ALJ set forth "specific, legitimate reasons" for giving little weight to the opinions expressed by Dr. Helman in the questionnaires, and that these reasons are "based on substantial evidence in the record." *Lester*, 81 F.3d at 831.

**D. Determination by the State of California**

Finally, the record includes a statement from the State of California showing that Plaintiff received state disability benefits for a year, through May 2008. AR 188. Plaintiff concedes that a state's finding of disability does not bind the Commissioner, but argues that the ALJ erred by making no mention of the state's finding. Indeed, a disability determination made by another agency is not binding on the Commissioner, and, although a state finding of disability may be introduced into evidence, the Commissioner "may attribute as much or as little weight to it as the [Commissioner] deems appropriate." *Bates v. Sullivan*, 894 F.2d 1059, 1063 (9th Cir. 1990) (holding that the Commissioner may give as much or as little weight to a state finding of disability as the Commissioner finds appropriate, even if the claimant has been found eligible to receive state disability benefits under a standard more rigorous than the one used to determine eligibility for SSI and Title II disability benefits) (overruled in part on other grounds); *see also* 20 C.F.R. § 404.1504; *cf. McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (holding that an ALJ erred by failing to mention the Department of Veterans Affairs' determination that the claimant was 80% disabled, but recognizing the distinction between the finding of a federal agency, and the finding of

a state agency).  Here, where substantial evidence supports the ALJ's decision, and the ALJ cited specific, thorough reasons for rejecting the opinion from a treating source that Plaintiff was disabled, the ALJ's failure to mention the state's disability determination does not warrant remand. *See also Fair v. Bowen*, 885 F.2d 597, 606 (9th Cir. 1989) (remand not required for consideration of evidence that is not material).

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's RFC assessment is supported by substantial evidence, that the ALJ provided clear and convincing reasons for rejecting Plaintiff's statements about the severity of her symptoms, that the ALJ set forth sufficient reasons for giving little weight to the opinions expressed by Dr. Helman in the questionnaires, and that the ALJ's failure to mention a non-binding disability determination by the state does not warrant remand. Accordingly, IT IS ORDERED THAT Plaintiff's motion for summary judgment is DENIED and Defendant's motion for summary judgment is GRANTED.

Dated: March 31, 2013

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C12-00661 HRL Order will be electronically mailed to:**

Elizabeth Barry elizabeth.barry@ssa.gov

Tom F. Weathered tweathered@covad.net

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**